United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

CHRISTOPHER KOVACS, et al.,

Plaintiffs,

v.

ENTERPRISE HOLDINGS, INC.,

Defendant.

Case No. 26-cv-04648-LB

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: ECF No. 25

## INTRODUCTION

The plaintiffs in this putative class action claim disabilities based on chemical sensitivities to synthetic fragrances. They sue Enterprise Holdings, Inc., for discriminating against them by using synthetic fragrances in their facilities and rental vehicles, asserting claims for violations of (1) the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12182(b)(2)(A)(ii), (iv), 12183(a)(2), (2) the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51–52, (3) the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, and (4) the California Unfair Competition Law (UCL), Cal. Bus. § Prof. Code § 17200. The plaintiffs rented vehicles from Enterprise and allege that it denied them reasonable accommodations for their chemical sensitivity to fragrance (for example, plaintiff Kye Teshirogi asked Enterprise not to use synthetic fragrances in his rental vehicle and to leave the window cracked a few hours before his pickup time) and that Enterprise's denying those accommodations has barred them from future access to Enterprise's facilities.

United States District Court
Northern District of California

Enterprise moves to compel arbitration, contending that the plaintiffs signed rental agreements requiring arbitration and delegating gateway issues to an arbitrator. Teshirogi disputes that he agreed to arbitration, and both plaintiffs argue that the rental agreements do not contain clear and unmistakable agreements to delegate gateway issues to an arbitrator. In the alternative, Enterprise moves to dismiss the plaintiffs' claims on grounds of (1) lack of personal jurisdiction, (2) lack of standing, (3) and that the plaintiffs have not plausibly pleaded any of their claims.

The court grants the motion to compel arbitration. Enterprise has provided sufficient evidence establishing the existence of the arbitration agreement, and the arbitration agreements clearly and unmistakably delegate gateway issues to an arbitrator. (The court in the alternative would dismiss the plaintiffs' claims with leave to amend.)

## STATEMENT

### 1. The Plaintiffs Rented Vehicles from Enterprise

The plaintiffs "suffer from chemical sensitivities and, when exposed to fragrance, are substantially limited in their ability to concentrate and/or breathe."[1] The plaintiffs and class members "avoid certain public areas and cannot sit in proximity to others wearing fragrance without experiencing adverse and debilitating health reactions," including migraines, nausea, chest tightness, coughing, loss of voice, scratchy throats, rhinitis, and concentration difficulties.[2]

Enterprise uses synthetic fragrances at its facilities to "trick visitors into associating Defendant's Facilities with cleanliness by masking odors such as mold, and to suggest that the Facilities' unique smell is tantamount to Defendant being a unique (and, thus, coveted) company, worthy of Class members' patronage."[3] Kovacs rented a vehicle at Enterprise's facility at the John Wayne Airport in Santa Ana, California, from May 15 to 18, 2024, and "was unable to enjoy full and equal access to Defendant's rental car services due to Defendant's use of fragranced

---

[1] First Am. Compl. (FAC) – ECF No. 21 at 9 (¶ 28). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 38 (¶ 121).

[3] *Id.* at 25 (¶ 70).

substances."[4] Kovacs alleges that he "requested reasonable accommodations for his physical disability and was denied them by Defendant."[5] He also rented vehicles from Enterprise from February 15 to 16, 2024, March 17 to 22, 2024, April 1 to 4, 2024, and January 7 to 12, 2024.[6]

Teshirogi rented a vehicle at Enterprise's facility at the Monterey Regional Airport from January 22 to 31, 2026.[7] Prior to his rental, he called Enterprise and asked it to remove any air fresheners from the rental car, to not detail the car beforehand, and to leave the windows cracked open for a few hours prior to his scheduled pickup time to minimize fragrance.[8] Enterprise assigned Teshirogi a vehicle that was "strongly fragranced" without letting him examine it or exchange it for another vehicle.[9] Teshirogi "felt unsafe driving but felt he had no choice but to use the fragranced vehicle."[10] He did not return the car early.[11]

The plaintiffs assert that they are "barred from future access" to Enterprise's facilities because of its unwillingness to make reasonable accommodations for them.[12] They claim that Enterprise states on its website that it is "one of the top brands among airport car rental customers" and promises "better experiences focused on people-first and purpose-led solutions."[13] The plaintiffs assert that "Defendant has made and continues to make various representations about the accessibility and quality of its facilities" and that "[t]hese statements are clear and unambiguous: consumers can and should depend on Defendant's facilities being safe and accessible to all."[14]

---

[4] *Id.* at 8 (¶¶ 20–21).

[5] *Id.* (¶ 22).

[6] Byrd Decl. – ECF No. 25-1 at 14–15; Rental Agreement Summaries, Exs. K–N to *id.* – ECF No. 25-2 at 78–92.

[7] FAC – ECF No. 21 at 9 (¶¶ 24–25).

[8] *Id.* (¶ 26).

[9] *Id.*

[10] *Id.*

[11] Foster Decl. – ECF No. 25-3 at 3 (¶ 9).

[12] FAC – ECF No. 21 at 9 (¶¶ 23, 27).

[13] *Id.* at 29 (¶ 83).

[14] *Id.* (¶ 84).

United States District Court
Northern District of California

The plaintiffs bring damages claims on behalf of California residents and claims for injunctive or equitable relief on behalf of residents of the United States and California who are "chemically sensitive (disabled) persons . . . who as a result of their disabled status, and due to Defendant's use of Synthetic fragranced consumer products, were denied safe, full and equal access and enjoyment to/of Defendant's Facilities."[15]

**2. Rental Agreement**

Before renting a vehicle at Enterprise's Monterey or Santa Ana locations, customers are presented with a tablet containing a rental agreement, which governs all rental transactions.[16] The agreement (about six pages of text on the tablet) includes a summary of charges, a damage-waiver notice, a warning that using a motor vehicle can expose the renter to certain chemicals, notice of what the responsibilities of the parties are when a vehicle is damaged, a line for the renter's initials, and beneath that, a paragraph in all caps titled "Renter Acknowledgement of, and Agreement to, the Contract," which states,

> I, THE "RENTER" SIGNING BELOW, HAVE READ AND AGREE TO THE TERMS AND CONDITIONS, WHICH ARE INCORPORATED HEREIN BY REFERENCE AS IF FULLY SET FORTH HEREIN, AND THE RENTAL AGREEMENT SUMMARY (COLLECTIVELY, THE ADDITIONAL TERMS AND CONDITIONS AND THE RENTAL AGREEMENT SUMMARY ARE THE "CONTRACT").[17]

The same paragraph also identifies the arbitration provision, stating that "I FURTHER ACKNOWLEDGE AND CONSENT TO THE PARAGRAPH WITH THE HEADING DISPUTE RESOLUTION PROVISION – MANDATORY ARBITRATION AGREEMENT IN THE ADDITIONAL TERMS AND CONDITIONS."[18] A hyperlink to the Additional Terms and Conditions is provided in the Rental Agreement Summary, which is generated by a renter's assent

---

[15] *Id.* at 12–13 (¶¶ 39–40).

[16] Foster Decl. – ECF No. 25-3 at 2 (¶ 3).

[17] Byrd Decl. – ECF No. 25-1 at 2–3 (¶¶ 4–6); Screen Shots & Rental Agreement Summary, Exs. A–B to *id.* – ECF No. 25-2 at 2–10.

[18] Screen Shots & Rental Agreement Summary, Exs. A–B to *id.* – ECF No. 25-2 at 7, 10.

to the agreement and provided to the renter in hard copy as part of their "Express Return" packet.[19]

Section 11(b) of the Additional Terms and Conditions contains the "Mandatory Arbitration Agreement" and states,

> YOU AND WE EACH WAIVE OUR RIGHT TO A JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION PURSUANT TO THE FOLLOWING TERMS. YOU AND WE EACH AGREE TO ARBITRATE ANY AND ALL CLAIMS, CONTROVERSIES OR DISPUTES OF ANY KIND ("CLAIMS") AGAINST EACH OTHE ARISING OUT OF OR RELATING IN ANY WAY TO THE CONTRACT, INCLUDING BUT NOT LIMITED TO, CLAIMS RELATING TO OUR PRODUCTS AND SERVICES, COMMUNICATIONS WITH YOU, CHARGES, ADVERTISINGS, OR RENTAL VEHICLES.[20]

The provision further provides that "YOU AND WE EACH AGREE THAT NO CLAIMS WILL BE PURSUED OR RESOLVED AS A CLASS ACTION, PRIVATE ATTORNEY GENERAL OR OTHER REPRESENTATIVE ACTION OR PROCEEDING" and allows individual actions to be brought in small claims court.[21] Claims by either party "will be resolved pursuant to the AAA's Consumer Arbitration Rules."[22] Section 11(b)(2) then states that the arbitrator has "exclusive authority to resolve any dispute relating to the scope, interpretation, applicability, enforceability, or formation of the Contract."[23] Section 12(g) provides a phone number and email address for "inquiries related to customers with disabilities."[24]

Enterprise's business records indicate that Teshirogi reviewed the rental agreement on a tablet provided by Enterprise and selected the "Sign on Paper" option to print and sign the Rental Agreement and Additional Terms and Conditions at the rental counter, which generated the Rental Agreement Summary for that transaction.[25]

---

[19] Byrd Decl. – ECF No. 25-1 at 2 (¶ 3); Additional Terms, Ex. C to *id.* – ECF No. 25-2 at 13–26.

[20] Additional Terms, Ex. C to Byrd Decl. – ECF No. 25-2 at 23 (§ 11(b)).

[21] *Id.*

[22] *Id.* at 24 (§ 11(b)(1)).

[23] *Id.* (§ 11(b)(2)).

[24] *Id.* at 25 (§ 12(g)).

[25] Foster Decl. – ECF No. 25-3 at 3 (¶ 5); Rental Agreement Summary, Ex. B to *id.* – ECF No. 25-4 at 9–11.

United States District Court
Northern District of California

Kovacs signed rental agreements each time he rented vehicles from Enterprise between January and May 2024.[26] He has been a member of Enterprise's Emerald Club since August 2011 and the Enterprise Plus loyalty program since July 2022.[27] He updated his Emerald Club profile and electronically signed acceptance of the Emerald Club program's coverage and rental terms, which contain arbitration agreements substantially the same as that contained in the rental agreement, in July 2022, April 2023, and October 2025.[28]

## ANALYSIS

Enterprise moves to compel arbitration and, in the alternative, to dismiss the plaintiffs' claims for lack of personal jurisdiction, lack of standing, and failure to plausibly plead their claims.

### 1. Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Further, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 67–68 (cleaned up); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 654 (2022) ("[I]t is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability."). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 586 U.S. at 69 (citing 9 U.S.C. § 2). "But if a valid agreement

[26] Rental Agreement Summaries, Exs. K–N to Byrd Decl. – ECF No. 25-2 at 78–92.

[27] Byrd Decl. – ECF No. 25-1 at 4 (¶¶ 8–9); Emerald Club & Enterprise Plus Enrollments, Exs. D–E to *id.* – ECF No. 25-2 at 28–32.

[28] Byrd Decl. – ECF No. 25-1 at 4 (¶ 6); Emerald Club Updates & Terms, Exs. G–J to *id.* – ECF No. 25-2 at 53–77.

United States District Court
Northern District of California

exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

The issues are (1) whether Enterprise can show that Teshirogi signed the arbitration agreement (Kovacs does not dispute this point) and (2) whether there was a clear and unmistakable delegation of gateway issues.

**1.1 Existence of the Arbitration Agreement**

The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010), *superseded by statute on other grounds*. Under California law, "[t]he terms of an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998) (cleaned up). This precept applies to arbitration provisions within contracts. *See id.*

In support that Teshirogi signed the agreement, Enterprise offers the electronic agreement, which is unsigned (because Teshirogi selected the "Sign on Paper" option) and a declaration stating that everyone who rents from Enterprise must review and sign the Rental Agreement (and that Teshirogi did so), either on a tablet screen or on a printed hard copy, and that the terms of the agreement were emailed to him.[29] Teshirogi contends that an unsigned agreement and a declaration characterizing unproduced internal notes does not meet Enterprise's burden of showing that he signed a rental agreement.[30] Enterprise responds that it is not required to provide a signed agreement to meet its burden and need only show the agreement's existence by a preponderance of the evidence, which it characterizes as the "lowest burden of proof."[31]

Enterprise has met its burden of showing the existence of the arbitration agreement. Declarant Foster, who personally assisted Teshirogi with his rental, explained that "[e]very rental transaction

[29] Mot. – ECF No. 25 at 19–22.

[30] Opp'n – ECF No. 27 at 11–12.

[31] Reply – ECF No. 29 at 8–10.

at an Enterprise-SF location . . . is governed by a standard Rental Agreement Summary and accompanying additional Terms and Conditions" and that "[a]ll renters must review and sign the Rental Agreement Summary . . . before renting a vehicle from Enterprise."[32] Foster stated that Teshirogi rented a vehicle from Enterprise between January 22 and 31, 2026, reviewed the agreement on a tablet, and selected the "Sign on Paper" option to print and sign the agreement at the rental counter, which generated the Rental Agreement Summary for that transaction.[33] These facts are sufficient to meet Enterprise's burden: they describe the process that all renters must follow to rent from Enterprise, which requires signing the agreement, and establish that Teshirogi rented a vehicle from Enterprise. Teshirogi does not contend that he did not rent a vehicle from Enterprise or that he did not sign the agreement, only that Enterprise cannot prove that he did, and provides no evidence to the contrary.[34] Absent allegations refuting Enterprise's showing that Teshirogi signed the rental agreement, Enterprise has met its burden.

### 1.2 Clear and Unmistakable

Enterprise asserts that (1) the plain language of the rental agreement's delegation provision combined with its referencing the AAA Commercial Rules makes a clear and unmistakable agreement between the parties to delegate gateway issues to an arbitrator and (2) Kovacs is independently bound by substantially similar arbitration agreements he signed as an Emerald Club Member with Enterprise.[35] The plaintiffs respond that the delegation provision is not clear and unmistakable because (1) the structure of the agreement — a signature acknowledgement referencing a set of attached additional terms that include an arbitration agreement with no mention of a delegation clause in the acknowledgement or headings of the additional terms — does not show that the plaintiffs agreed to delegate gateway issues, (2) incorporation of the AAA arbitration rules is insufficient because the plaintiffs are unsophisticated, and (3) the same deficiencies are present in

---

[32] Foster Decl. – ECF No. 25-3 at 2 (¶ 3).

[33] *Id.* at 3 (¶¶ 5–9).

[34] Opp'n – ECF No. 27 at 11–12.

[35] Mot. – ECF No. 25 at 17–18, 20–21.

the Emerald Club agreements that Kovacs signed.[36] Enterprise replies that the plaintiffs' assenting to an agreement that incorporates the arbitration provisions by reference satisfies the clear-and-unmistakable requirement and that the plaintiffs have cited no case requiring Enterprise to flag the delegation clause independently of the arbitration provisions.[37]

The parties have clearly and unmistakably agreed to delegate gateway issues to an arbitrator. Beneath the signature line of the rental agreement is a paragraph in all caps stating, among other things, that the additional terms contain a "mandatory arbitration agreement."[38] The title for the section with the delegation clause is "Dispute Resolution Provision – Mandatory Arbitration Agreement," which is in bold and underlined. Section 11(b) states in all caps that the parties "agree to arbitrate any and all claims, controversies or disputes of any kind against each other arising out of or relating in any way to the contract."[39] Section 11(b)(2) (titled "Arbitrator's Authority") then states that the arbitrator has "exclusive authority to resolve any dispute relating to the scope, interpretation, applicability, enforceability, or formation of the Contract."[40] This language is unambiguous.

The plaintiffs do not appear to argue otherwise, instead contending that the rental agreement's structure hid the delegation clause from them.[41] But surprise goes to procedural unconscionability (a point that the plaintiffs do not overtly contest) not to whether language of the agreement clearly and unmistakably delegates gateway issues to an arbitrator.[42] Regardless of the agreement's structure, the language is clear. Thus, the plaintiffs' arguments about incorporation of the AAA rules and the Emerald Club Program do not change the result.

---

[36] Opp'n – ECF No. 27 at 13–15. The plaintiffs framed their arguments on this issue as asserted by Kovacs. *Id.* The court extends these arguments to Teshirogi too.

[37] Reply – ECF No. 29 at 11–12.

[38] Screen Shots & Rental Agreement Summary, Exs. A–B to Byrd Decl. – ECF No. 25-2 at 7, 10.

[39] Additional Terms, Ex. C to *id.* – ECF No. 25-2 at 23 (§ 11(b)).

[40] *Id.* at 24 (§ 11(b)(2)).

[41] Opp'n – ECF No. at 12–13.

[42] Reply – ECF No. 29 at 12 (making this point).

To the extent that the plaintiffs intended to attack the delegation clause as unconscionable, that argument fails because, while unconscionability requires a showing of both procedural and substantive unconscionability, the plaintiffs have only asserted arguments fitting procedural unconscionability. *Correa v. Firestone Complete Auto Care*, No. C 13-03123 CW, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) ("[A] contract is enforceable no matter how great the degree of procedural unconscionability, unless it is also substantively unconscionable." (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000))).

Having determined that the parties agreed to arbitration agreements containing clear and unmistakable delegation clauses, the court compels arbitration.

## 2. Motion to Dismiss

Enterprise moves in the alternative to dismiss the plaintiffs' claims, asserting (1) lack of personal jurisdiction, (2) lack of standing, (3) and that the plaintiffs have not plausibly pleaded any of their claims. The court would grant the motion to dismiss with leave to amend.

### 2.1 Legal Standards

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). Enterprise asserts a facial attack.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow the court to draw a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts well-pleaded factual allegations as true and construes them in the plaintiff's favor, but it does not accept legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). If the court dismisses, it ordinarily gives leave to amend; it may deny leave when

amendment would be futile or when the plaintiff has failed to cure deficiencies despite prior amendments. *Manzarek*, 519 F.3d at 1031; *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (the court's discretion to deny leave is "particularly broad" where the plaintiff has amended before).

**2.2 Personal Jurisdiction**

Enterprise contends that it is a holding company that has never transacted business in California and that the Enterprise locations at issue are operated by Enterprise-SF and Enterprise-LA. The plaintiffs do not dispute this and request leave to amend to add the proper defendants.[43] The court would grant leave to do so. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (courts should "grant leave to amend freely when justice so requires," Fed. R. Civ. P. 15(a)(2), applying that policy with "extreme liberality" and weighing bad faith, undue delay, prejudice, futility, and prior amendment).

**2.3 Standing**

Article III standing requires (1) a concrete and particularized injury-in-fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be "'real,' and not 'abstract.'" *Id.* at 340 (citing dictionaries). "'Concrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* (cleaned up).

To establish standing for purposes of an ADA claim, "the plaintiff must allege 'continuing, present adverse effects' stemming from the defendant's actions" because past exposure to illegal

[43] Opp'n – ECF No. 27 at 15–16.

conduct is not sufficient. *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017) (cleaned up). A plaintiff can establish standing in two ways: (1) "by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility," or (2) by demonstrating that he or she has been deterred from returning to the public accommodation at issue. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

Enterprise argues that the plaintiffs have not shown injury-in-fact for their ADA claims because they do not allege that they were unable to use their rental vehicles — neither of them ended their rentals early, and Kovacs rented vehicles from Enterprise on multiple occasions.[44] The plaintiffs respond that they have pleaded injury-in-fact through allegations that they were unable to fully enjoy access to Enterprise's services because of the side-effects of the fragranced substances Enterprise uses and are deterred from future visits.[45] The parties agree that standing for the Unruh Act claims is tied to the ADA claims.[46]

The allegations that the plaintiffs are deterred from renting from Enterprise again because of fragrances plausibly alleges standing for the ADA and Unruh Act claims. While allegations that the plaintiffs are "barred from future access" are conclusory, other allegations that they suffer respiratory problems and headaches when exposed to synthetic fragrances sufficiently explain how they are deterred from using Enterprise's services.

The parties also dispute statutory standing under the CLRA and UCL. Enterprise's arguments that the plaintiffs have not alleged that they saw the challenged website statements or that the statements are false are better addressed on the merits of the claims, which the court addresses in the next sections. On this record, the plaintiffs have established Article III and statutory standing.

---

[44] Reply – ECF No. 29 at 15. Enterprise also argued that the plaintiffs' ADA claims are moot because they could have requested the reasonable accommodations they seek by contacting Enterprise through the dedicated number and email for disability-related requests. *Id.* Because the argument was raised for the first time in the reply, the court does not address it.

[45] Opp'n – ECF No. 27 at 17–18.

[46] *Id.* at 18.

**2.4 ADA and Unruh Act Claims**

Title III of the ADA prohibits discrimination based on disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation by a person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a); *Gilstrap v. United Airlines, Inc.*, 709 F.3d 995, 1002 (9th Cir. 2013). To state a claim under Title III, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

The plaintiffs assert violations of the ADA through Enterprise's (1) failing to modify existing policies and procedures to make its facilities accessible to all persons with disabilities under 42 U.S.C. § 12182(b)(2)(A)(ii), (2) failing to remove architectural barriers under § 12182(b)(2)(A)(iv), and (3) designing facilities that were "substantially modified" in a manner that independently triggers accessibility requirements under § 12183(a)(2). Claims under §§ 12182(b)(2)(A)(iv) and 12183(a) require determining whether an architectural element denies full and equal access to persons with disabilities based on the ADA Accessibility Guidelines (ADAAG). *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847–48 (N.D. Cal. 2011) (citing *Chapman*, 631 F.3d at 945).

Enterprise contends that (1) the plaintiffs' §§ 12182(b)(2)(A)(iv) and 12183(a)(2) theories fail because exposure to fragrance is not an architectural barrier within the meaning of the ADA and is not a design standard covered by the ADAAG and (2) their reasonable-modification theory fails because they have not plausibly pleaded a qualifying disability or that they requested accommodations from Enterprise related to a disability.[47] The plaintiffs assert that they have plausibly pleaded disabilities and that they made requests for reasonable accommodations but offer no response on the ADAAG argument, conceding those theories. *Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (a failure to

[47] Mot. – ECF No. 25 at 26–31.

respond to an argument is a concession of it) (collecting cases). The parties agree that the plaintiffs' Unruh Act claims are derivative of their ADA claims.[48]

The plaintiffs have not established that they were denied reasonable accommodations because of their disabilities. The sole allegation for Kovacs — that he "requested reasonable accommodations for his physical disability and was denied them by Defendant" — is conclusory and provides no details about what accommodation he requested.[49] Kovacs requests leave to amend, and the court would grant it.

Enterprise contends that Teshirogi's allegations similarly fail because he did not frame his requests to Enterprise about removing fragrances as related to a disability rather than a personal preference.[50] Teshirogi counters that he need not "recite a legal formula when asking a business to accommodate him" and whether Enterprise knew or should have known the request was disability-related is a factual question.[51] On this complaint, Teshirogi cannot show that he was denied a reasonable accommodation because of his disability because there are no allegations showing that Enterprise was aware that he had a disability.

Thus, the plaintiffs have not plausibly pleaded an ADA violation under any theory or a derivative claim under the Unruh Act.

### 2.5 CLRA and UCL

The CLRA and UCL "prohibit unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). To survive dismissal, each claim must pass two tests: (1) the "reasonable consumer" test set forth in California case law, and (2) the heightened pleading standard set forth in Fed. R. Civ. P. 9(b). *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 & n.2 (9th Cir. 2018); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018–19, 1019 n.11 (9th Cir. 2020).

---

[48] Opp'n – ECF No. 27 at 25.

[49] *Id.* at 24.

[50] Reply – ECF No. 29 at 17–18.

[51] Opp'n – ECF No. 27 at 24–25.

United States District Court
Northern District of California

"Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). (cleaned up). This requires the plaintiff to "plead facts showing that a 'significant portion of the general consuming public . . . , acting reasonably in the circumstances, could be misled.'" *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111 (N.D. Cal. 2020) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

Generally, determining "whether a reasonable consumer would be deceived" is a question of fact. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Nonetheless, in rare situations, "a court may determine, as a matter of law, that the alleged violations of the UCL . . . and CLRA are simply not plausible." *Cheslow*, 445 F. Supp. 3d at 16 (cleaned up); *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 1569697, at *7 (N.D. Cal. Mar. 30, 2018).

Enterprise contends that the statements identified by the plaintiffs are not actionable under the reasonable-consumer test because they are mere puffery and the plaintiffs cannot show reliance on the statements because they did plead that they viewed them.[52] The plaintiffs respond that (1) this is a fact issue that cannot be decided on the pleadings, (2) representations about safety are statements of fact, and (3) the plaintiffs also plead concealment by Enterprise.[53] The statements at issue are puffery.

Puffery is a statement that "is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Id.*; *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) ("Generalized, vague and unspecific assertions constitute mere 'puffery' upon which a reasonable consumer could not rely." (cleaned up)), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003); *Lamartina v. VMware, Inc.*, No. 5:20-cv-02182-EJD, 2021 WL 4133851, at *10 (N.D. Cal. Sep. 10, 2021)

[52] Reply – ECF No. 29 at 20.

[53] Opp'n – ECF No. 27 at 28–29.

("Generalized statements of corporate optimism, such as business is 'healthy,' may be considered puffery."). Whether language constitutes non-actionable puffery may be decided as a matter of law. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

The two statements that the plaintiffs identify — that Enterprise is "one of the top brands among airport car rental customers" and promises "better experiences focused on people-first and purpose-led solutions" — are general claims, not statements about safety.[54] These statements are puffery that could not mislead a significant portion of the consuming public about Enterprise's practices of using synthetic fragrances in its facilities or vehicles.

The remaining allegations that the plaintiffs point to as supporting their CLRA claims are generalized sentiments that Enterprise markets itself as being equally available to all members of the public, but the plaintiffs provide no actual quotations from Enterprise.[55] Thus, they do not meet Rule 9's heightened pleading requirement. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."), *superseded by statute on other grounds*. The plaintiffs' allegations of concealment of material facts by Enterprise are conclusory.[56]

Without having pleaded plausible violations of the ADA, Unruh Act, or CLRA, the plaintiffs lack predicates to support their unfair and unlawful prongs under the UCL. For the same reasons that their CLRA claim fails, their theory under the UCL fraud prong also fails.

---

[54] FAC – ECF No. 21 at 29 (¶ 83).

[55] *Id.* at 5 (¶ 9), 29 (¶ 84), 44 (¶ 158).

[56] *See id.* at 16–17 (¶¶ 48–52), 32 (¶ 97).

United States District Court
Northern District of California

## CONCLUSION

The court compels arbitration as to both plaintiffs and stays the case pending arbitration. *Smith v. Spizziri*, 601 U.S. 472, 474, 476–78 (2024) (per curiam) (requiring stay). In the alternative, the court would dismiss all of the plaintiffs' claims with leave to amend. This resolves ECF No. 25.

**IT IS SO ORDERED.**

Dated: September 30, 2026

LAUREL BEELER
United States Magistrate Judge